## UNITED STATES v. HEMET.

### (District Court, D. Oregon. September 27, 1907.)

### No. 4,964.

1. ALIENS—CONSTRUCTION OF IMMIGRATION ACT—EXECUTIVE ORDER EXCLUDING LABORERS.

Immigration Act Feb. 20, 1907, c. 1134, § 1, 34 Stat. 898 [U. S. Comp. St. Supp. 1907, p. 389], provides "that whenever the President shall be satisfied that passports issued by any foreign government to its citizens to go to any country other than the United States or to any insular possession of the United States or to the Canal Zone, are being used for the purpose of enabling the holders to come to the continental territory of the United States to the detriment of the labor conditions therein, the President may refuse to permit such citizens of the country issuing such passports to enter the continental territory of the United States from such other country or from such insular possession or from the Canal Zone." Pursuant to said provision, the President, on March 14, 1907, issued an order that such "citizens of Japan or Korea, to wit, Japanese or Korean laborers, skilled and unskilled, who have received passports to go to Mexico, Canada or Hawaii and come therefrom, be refused permission to enter the continental territory of the United States." The order further directs the Secretary of Commerce and Labor to take such measures and to make and enforce such rules and regulations as may be necessary to carry the order into effect. *Held*, that neither such statute nor order applies to aliens who have no passports from their governments, nor does the order authorize the exclusion of Japanese or Korean laborers other than those having passports to go to Mexico, Canada, or Hawaii; that a rule, adopted by the commissioner, that if a Japanese or Korean laborer applies for admission and presents no passport it shall be presumed that he did possess a passport limited to Mexico, Canada, or Hawaii, is beyond any power conferred on him by either the act or the President's order, and affords no authority for excluding a Japanese or Korean laborer who presented no passport, the natural presumption in such case being that he had none, and there being no basis for the presumption stated in the rule.

2. SAME—FAILURE OF MASTER OF VESSEL TO RETURN ALIENS EXCLUDED—LIABILITY.

The master of a vessel is not subject to the penalty prescribed by section 19 of Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898 [U. S. Comp. St. Supp. 1907, p. 389], for failing to detain on board his vessel and return thereon to their own country aliens brought by him to the United States and who are not entitled to enter under the law, in a case where such aliens were shipped by him in a foreign port as seamen for the round voyage, and after being refused admission to the United States and returned to his vessel they escaped notwithstanding all reasonable efforts made by him in good faith to detain them, short of putting them in irons.

Wm. C. Bristol, U. S. Atty.

C. Henri Labbe, for defendant.

WOLVERTON, District Judge. The defendant is charged by information of the district attorney, with having brought within this country, in violation of Act Feb. 20, 1907, c. 1134, 34 Stat. 898 [U. S. Comp. St. Supp. 1907, p. 389], two aliens, to wit, Y. Oguri and Y. Kokehara, who are Japanese from Kobe, Japan, and who were, it is alleged, without passports and disqualified by the executive order of the President of the United States, issued March 14, 1907, to enter the

United States, in and upon a certain French bark St. Louis, of which he, the said Hemet, was master, and not immediately sending said aliens back to the country whence they came, and failing to detain them on board said bark, contrary to the provisions of section 19 of the act alluded to.

The bark left Kobe, Japan, for Australia February 2, 1907, and came to Portland from the latter country, arriving in Astoria August 24th, and in this port August 29th. The two Japanese shipped on the vessel as seamen, for the "round voyage." After their arrival in this port, they applied to the immigration officer for admission into the United States; their purpose being, as they stated under oath, to seek employment at manual labor. The matter was submitted to the board of special examiners, and, after examination had, the board adopted a motion excluding the parties from admission, basing its action upon the last proviso of section 1 of the immigration act and paragraph "b" of rule 22 of the immigration rules and regulations adopted in pursuance thereof. This occurred September 6th. The Japanese were then taken aboard the bark, and the defendant notified of what had been done, and required to deport them to the port whence they came. They remained aboard until the 18th or 19th, when they escaped; and, the vessel being now about to depart, the master is unable to take them with him.

The question is presented whether Oguri and Kokehara are subject to deportation. This requires an examination of the act of February 20, 1907, and the rules and regulations adopted by the Commissioner General of Immigration in pursuance of the act. The proviso of section 1 alluded to reads as follows:

"That whenever the President shall be satisfied that passports issued by any foreign government to its citizens to go to any country other than the United States or to any insular possession of the United States or to the Canal Zone are being used for the purpose of enabling the holders to come to the continental territory of the United States to the detriment of labor conditions therein, the President may refuse to permit such citizens of the country issuing such passports to enter the continental territory of the United States from such other country or from such insular possession or from the Canal Zone."

Section 2 of the act provides that certain enumerated classes of aliens shall be excluded from admission into the United States, such as idiots, imbeciles, feeble-minded persons, professional beggars, persons afflicted with tuberculosis, etc. But there is no regulation debarring the entry of any alien not having a passport from his home government. If such a regulation exists, I am not aware of it. The President, in pursuance of the proviso above set out, on March 14, 1907, issued an order which, after quoting the proviso, reads as follows:

"And whereas, upon sufficient evidence produced before me by the Department of Commerce and Labor, I am satisfied that passports issued by the government of Japan to citizens of that country or Korea and who are laborers, skilled or unskilled, to go to Mexico, to Canada and to Hawaii, are being used for the purpose of enabling the holders thereof to come to the continental territory of the United States to the detriment of labor conditions therein;

"I hereby order that such citizens of Japan or Korea, to wit, Japanese or Korean laborers, skilled and unskilled, who have received passports to go to

Mexico, Canada or Hawaii, and come therefrom, be refused permission to enter the continental territory of the United States.

"It is further ordered that the Secretary of Commerce and Labor be, and he hereby is, directed to take, through the Bureau of Immigration and Naturalization, such measures and to make and enforce such rules and regulations as may be necessary to carry this order into effect."

Rule 21 of the Commissioner General of Immigration was adopted in aid of the executive order, and reads:

"Japanese and Korean laborers.—The following rule is promulgated for the purpose of giving effect to an executive order of the President issued on March 14, 1907, reading:

\* \* \* \* \* \* \* \* \* \* \* \*

"(a) Aliens from Japan and Korea are subject to the general immigration laws.

"(b) Every Japanese or Korean laborer, skilled or unskilled, applying for admission at a seaport or at a landborder port of the United States and having in his possession a passport issued by the government of Japan, entitling him to proceed only to Mexico, Canada, or Hawaii, shall be refused admission.

"(c) If a Japanese or Korean laborer applies for admission and presents no passport, it shall be presumed (1) that he did not possess when he departed from Japan or Korea a passport entitling him to come to the United States, and (2) that he did possess at that time a passport limited to Mexico, Canada, or Hawaii.

"(d) If a Japanese or Korean alien applies for admission and presents a passport entitling him to enter the United States or one which is not limited to Mexico, Canada, or Hawaii, he shall be admitted, if it appears that he does not belong to any of the classes of aliens excluded by the general immigration laws.

"(e) If a Japanese or Korean alien applies for admission and presents a passport limited to Mexico, Canada, or Hawaii, and claims that he is not a laborer, either skilled or unskilled, reasonable proof of this claim shall be required in order to permit him to enter the United States."

It seems to me that the President has correctly interpreted the proviso, which means that the order shall extend to and comprise such citizens of any foreign government as shall have passports therefrom to any country other than the United States and are using such passports for the purpose of enabling the holders to come into the United States to the detriment of labor conditions. It does not, as I read it, extend to all citizens of the government issuing such passports, but only to the citizens of such government to whom the passports defined have been issued; and the President may, as he has done, refuse them permission to enter. There is no discrimination here between the citizens of different nations. The law is general, and extends to all aliens alike, of whatsoever nation or clime, and the "favored nation" idea has no place in the controversy. But rule 21, in my opinion, goes beyond the authority of the act in excluding Japanese and Koreans who are without passports from their government vouchsafing their entrance into this country direct. I say this because such is the effect of subdivision "c" of the rule. The Commissioner General's authority for making any rules is found in section 22 of the act:

"He shall establish such rules and regulations \* \* \* as he shall deem best calculated for carrying out the provisions of this act, and for protecting the United States and aliens migrating thereto from fraud and loss."

Thus his rules and regulations are to be designed to carry the act into practical effect; but he can make no rule contrary to the spirit of the law, and much less can he add to the law any provisions excluding aliens not already approved and adopted by Congress.

Now, referring to subdivision "c," it is a natural enough inference or deduction, if a Japanese or Korean presents no passport, that he possesses none entitling him to come into the United States; but it is altogether an unnatural and illogical sequence, if he presents no passport, to say that he does possess at the time a passport limited to Mexico, Canada, or Hawaii. The Congress might declare that from certain conditions certain results would become conclusively presumed, which presumption would then become the law to be observed. But there is no power accorded the Commissioner General to conclude parties by declaring such a presumption. As well might the Commissioner General have said by rule in the present case that, if a subject of Japan or Korea presents no passport, it shall be presumed that he is an idiot or professional beggar, or comes within one of the classes of aliens not entitled to admission, as defined by section 2 of the act. The inference is just as remote in the one case as in the other. So it seems to me that no presumption that the foreign subject possesses a passport limited to Mexico, Canada, or Hawaii, when he presents none at the time he applies for admission, can prevail; and it was beyond the authority of the Commissioner General to adopt such a rule. The present case presents a most apt illustration that such a presumption could not follow from the premises. It appears, and was made to appear beyond peradventure, that Oguri and Kokehara came into this country from their own country, by way of Australia, so that they could not have come into this country from either Mexico, Canada, or Hawaii, and the supposed presumption entails a fallacious non sequitur, and cannot be indulged. If it had been shown that these men came in from one of the three provinces or states inveighed against by the President's order, the inference or deduction involved by the declared presumption would have been more natural and logical, and might have been indulged as a rule or regulation. But not so where the positive proofs are to the contrary, and it is perfectly manifest that the subjects did not come here from either of the provinces or states mentioned. By subdivision "d" of rule 21, if a Japanese or Korean alien applies for admission and presents a passport entitling him to enter the United States, or one which is not limited to Mexico, Canada, or Hawaii, he shall be admitted if it appears that he does not belong to any of the classes of aliens excluded by the general immigration laws. This is a reasonable regulation, and perfectly logical under the act. But it cannot be deduced from that regulation, or from any other, that a Japanese or Korean shall be excluded because he comes with no passport at all. So I hold that the resolution of the board of examiners excluding Oguri and Kokehara was beyond its authority under the law, and that, notwithstanding the resolution, such persons are entitled to remain in the United States.

This disposes of the case, but it should be said of Hemet, the defendant, who is very intelligent, and apparently fair-minded, that he did all he could to keep Oguri and Kokehara aboard ship, and to re-

tain their services for the homeward voyage, except to put them in chains. Although they were engaged for the "round voyage," at their instance Hemet increased their pay for the return voyage, and they agreed, for such further consideration, to remain with him. This subsequent to the order of the board of special inquiry excluding these persons, and the notice from the inspector in charge to return them to the port whence they came. Relying not altogether upon their agreement, Hemet kept a watch on board; but, notwithstanding, they got ashore contrary to his purpose, and he has been unable to secure them since. That these persons departed clandestinely is evidenced by the fact that they left on board ship their clothing and personal effects, and the master is in their debt for a considerable portion of their wages theretofore earned. This is sufficient, to my mind, were the law otherwise than as I have determined it to be, to exonerate the defendant from the charge preferred under the information.

The order will therefore be that defendant be discharged.